NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000559
20-MAR-2019
08:51 AM

NO. CAAP-17-0000559

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IVAN W.K. AUYOUNG and BEVERLY A. AUYOUNG, Appellants-Appellees,
v. DEPARTMENT OF BUDGET AND FISCAL SERVICES,
CITY AND COUNTY OF HONOLULU, Appellee-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 16-1-1278)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

In this secondary appeal, Appellee-Appellant Department
of Budget and Fiscal Services, City and County of Honolulu (BFS)
appeals from a June 27, 2017 Circuit Court of the First Circuit
(Circuit Court)[1] Final Judgment and Order reversing BFS's
hearings officer's Findings of Fact, Conclusions of Law, and
Decision and Order Dated June 13, 2016 (Judgment).

I. BACKGROUND

The facts in this case are not in dispute. The parties
in this case disagree on the statutory interpretation of Revised
Ordinances of Honolulu (ROH) § 8-13.1,[2] with both claiming that

_____

[1] The Honorable Rhonda A. Nishimura presided.

[2] ROH § 8-13.1 provides,

"Income" means the sum of federal total income as
defined in the Internal Revenue Code of the United States of
1954, as amended, and all nontaxable income, including but
not limited to (1) tax-exempt interest received from the
federal government or any of its instrumentalities, (2) the
gross amount of any IRA distribution, pension or annuity

(continued...)

their respective views support the legislative purpose of protecting low-income homeowners.

Homeowners Ivan W.K. AuYoung and Beverly A. AuYoung (the AuYoungs) applied for a real property tax credit, claiming that their income for tax year 2014 was below the $60,000 cap.[3,4] BFS's Treasury Division denied their application, stating that, when including the AuYoungs' Roth IRA distributions, their income in 2014 was in excess of $60,000. The BFS's hearings officer affirmed the Treasury Division's denial of the application, ruling that the definition of income under ROH § 8-13.1 included the Roth IRA distribution, relying on the language that income included

> (2) the gross amount of any IRA distribution, pension or annuity benefits received (including Railroad Retirement Act benefits and veterans disability pensions), excluding rollovers, (3) all payments received under the federal Social Security and State unemployment insurance laws, (4) nontaxable contributions to public or private pension, annuity and/or deferred compensations plans[.]

The AuYoungs appealed the denial to the Circuit Court.

---

[2](...continued)
> benefits received (including Railroad Retirement Act benefits and veterans disability pensions), excluding rollovers, (3) all payments received under the federal Social Security and state unemployment insurance laws, (4) nontaxable contributions to public or private pension, annuity and/or deferred compensation plans, and (5) federal cost of living allowances. All income set forth in the tax return filed by the titleholder, whether the tax return is a joint tax return or an individual tax return, shall be considered the titleholder's income. "Income" does not include nonmonetary gifts from private sources, or surplus foods or other relief in kind provided by public or private agencies.

[3]     The AuYoungs submitted their joint 2014 United States Income Tax Return, which reported that their Federal total gross income was $39,830, pension dispersal was $23,156, and the distribution from their deferred compensation account was $3,600, for a total of $66,586.

[4] ROH § 8-13.2 provides, in part,

> An owner is entitled to a real property tax credit equal to the amount by which the taxes owed for the same tax year in which the application is filed for the property exceed three percent of the titleholders' income, provided:
>
> . . . .
>
> (3)     The combined income of all titleholders of the property for the calendar year immediately preceding the date of the application does not exceed $60,000[.]

2

In their appeal to the Circuit Court, the AuYoungs argued, *inter alia*, that the ROH § 8-13.1 definition of income did not mention Roth IRAs because they had not existed when the provision was enacted and amended. BFS pointed out that when ROH § 8-13.1's definition of income was amended to include IRAs in 2007, Roth IRAs had been in existence for over ten years. After the Circuit Court reviewed supplemental briefing from the parties on the legislative history of the 2007 amendment to ROH § 8-13.1, the Circuit Court reversed, holding that,

> APPELLANTS' ARGUMENT PRESENTS A MORE PERSUASIVE ARGUMENT OF LEGISLATIVE INTENT. THE ENTIRE PURPOSE OF ARTICLE 13 SECTION 8 WAS TO PROVIDE RELIEF TO "LOW-INCOME HOMEOWNERS" WHOSE COMBINED INCOME FOR A PARTICULAR PROPERTY DID NOT EXCEED $60,000.00. THE PHRASE, "INCLUDING BUT NOT LIMITED" CONTAINED WITHIN THE DEFINITION OF "INCOME" UNDER ROH SEC. 8-13.1 SERVES TO ILLUSTRATE EXAMPLES OF FINANCIAL PAYMENTS THAT SHARE COMMON ATTRIBUTES OF BEING TAXABLE, E.G. TRADITIONAL IRA DISTRIBUTIONS, PENSION, ANNUITY BENEFITS, DEFERRED COMPENSATION, ETC. PURSUANT TO HRS SEC. 94-14(G), THE HO'S [sic] DECISION IS REVERSED, SINCE THE SUBSTANTIAL RIGHTS OF THE PETITIONERS "MAY HAVE BEEN PREJUDICED BECAUSE THE . . . ORDER" WAS EITHER "[A]FFECTED BY OTHER ERROR LAW," OR "CHARACTERIZED BY ABUSE OF DISCRETION" IN THE INTERPRETATION OF "INCOME" TO INCLUDE THE GROSS AMOUNT OF THE ROTH DISTRIBUTION, RATHER THAN RESTRICTING IT TO ONLY THAT PORTION OF THE ROTH DISTRIBUTION - [TAXABLE] INTEREST, EXCLUDING THE INITIAL $20,000 WHICH HAD ALREADY BEEN TAXED. TO INCLUDE THE GROSS AMOUNT OF THE ROTH DISTRIBUTION WOULD EASILY DEFEAT THE UNDERLYING LEGISLATIVE PURPOSE OF ROH ARTICLE 8 SECTION 13 [sic], TO PROVIDE CERTAIN REAL PROPERTY TAX RELIEF TO LOW-INCOME HOMEOWNERS WHOSE COMBINED INCOME EXCEED $60,000.00.

## II. DISCUSSION

BFS's points of error essentially allege that the Circuit Court erred in holding that the AuYoungs' Roth IRA distributions were not "income." BFS asserts that the AuYoungs' Roth IRA distributions should be considered as income because income under ROH § 8-13.1 includes contributions to all types of IRAs--including Roth IRAs--in the tax year in which the contribution is made, as well as distributions from the same in the tax year in which the distribution is made.

The AuYoungs respond that, because the ROH § 8-13.1 definition of "income" is based upon the federal tax code, and Roth distributions are not "income" under 26 U.S. Code § 61, the 2007 amendment to ROH § 8-13.1 would surely have listed Roth IRA distributions as income if the intent was to obtain a contrary result. 26 U.S.C.A. § 61 (West, Westlaw through Pub. L. No. 98-

3

369). The AuYoungs further assert that, if one follows BFS's logic that any numbers under the income heading on a federal tax return transcript is to be considered income for purposes of a real property tax credit, then BFS wrongly excluded from its calculation the AuYoungs' annuities and pensions.

We review the Circuit Court's decision to determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (2012) to the agency's decision. United Pub. Workers, AFSCME, Local 646, AFL-CIO, v. Hanneman, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005). Under HRS § 91-14(g),[5] an agency's conclusions of law are reviewed de novo. Id.

The plain language supports the BFS's interpretation. "Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." Sierra Club v. Dep't of Trans. of State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009). When simplifying the language to the provisions at issue, the ordinance defines income as "the sum of federal total income as defined in the Internal Revenue Code . . . and all nontaxable income, including . . . the gross amount of any IRA distribution[.]" ROH § 8-13.1 (emphases

---

[5]     HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

> (g)     Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)     In violation of constitutional or statutory provisions; or
>
> (2)     In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)     Made upon unlawful procedure; or
>
> (4)     Affected by other error of law; or
>
> (5)     Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)     Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

added). Thus, even if an IRA distribution is nontaxable for Internal Revenue Service (IRS) tax return purposes--such as a Roth IRA distribution[6]--to calculate whether the homeowner qualifies for a tax credit, the non-taxable distribution will be added to the total taxable income.

The legislative history further supports and clarifies this interpretation of ROH § 8-13.1. In 2007, the City Council proposed an amendment to ROH § 8-13.1, which involved, inter alia, changing the starting point for the definition of income from the "federal adjusted gross income" to "federal total income" as defined in the Internal Revenue Code.[7] City Council Comm. Rep. on Budget, at 3 (May 16, 2007), available at http://www4.honolulu.gov/docushare/dsweb/Get/Document-63957/2d4f-qpv.pdf (last visited on Mar. 18, 2019). The Director of BFS submitted testimony that clearly explained how the proposed amendment would affect the definition of income.[8] The testimony included a spreadsheet, which showed that, for the purposes of calculating income, the starting point would change from the

---

[6] Under the Internal Revenue Code, Roth IRA distributions "shall not be includible in gross income" and are therefore generally non-taxable. 26 U.S.C.A. § 408A(d)(1) (West, Westlaw through Pub. L. No. 110-458). Notwithstanding the non-taxable nature, all Roth IRA distributions must be reported on IRS Form 1040 at line 15a, i.e., "IRA distributions." See IRS Form 1040 (2006) Instructions at 25.

[7] Bill 38 provided, in relevant part,

"Income" means the sum of federal [adjusted gross] total income as defined in the Internal Revenue Code of the United States of 1954, as amended, and all nontaxable income, including but not limited to [the amount of capital gains excluded from adjusted gross income, alimony, support money, nontaxable strike benefits, cash public assistance and relief (not including relief granted under this article),] (1) tax-exempt interest received from the federal government or any of its instrumentalities, (2) the gross amount of any IRA distribution, pension or annuity benefits received (including Railroad Retirement Act benefits and veterans disability pensions), excluding rollovers[.]

Ordinance 07-30, Bill 38, CD1 (June 6, 2007), available at http://www4.honolulu.gov/docushare/dsweb/Get/Document-64391/2f5-55mg.pdf (last visited on Mar. 18, 2019).

[8] See Letter from Director Mary P. Waterhouse, Department of Budget and Fiscal Services, City and County of Honolulu, to The Honorable Todd K. Apo, Chair and Members of the Budget Committee, Honolulu City Council (hereinafter Testimony) (Apr. 18, 2007), available at http://www4.honolulu.gov/docushare/dsweb/Get/Document-61805/280r9mkk.pdf (last visited on Mar. 18, 2019).

number listed as "adjusted gross income" on line 37 to the number listed as "total income" on line 22 on IRS Form 1040. Testimony at 2-3. Thus, the <u>starting point</u> under both the pre- and post-amendment versions of the ordinance included IRA distributions (line 15a) <u>only if</u> those distributions are taxable by the IRS (line 15b).

At the time of the 2007 amendment, Roth IRAs had been in existence for approximately a decade. Thus, we can assume that the City Council was aware that Roth IRA distributions are generally non-taxable by the federal government. The 2007 amendment required, under subsection (2), that the gross amount of "any IRA distribution" be added to the federal total income. By use of the word "any," the City Council clearly intended for all IRA distributions not already included under "total income" to be considered income for the purpose of real property tax credit calculations. Thus, the BFS properly added the AuYoungs' Roth IRA distributions to their federal total income, which resulted in the sum of $66,586 for purposes of determining eligibility for a tax credit.[9]

The amendment is consistent with, and furthers the legislative purpose behind, offering a tax credit under ROH § 8-13.2(3) to low-income homeowners who likely do not have access to the cash needed to pay real property taxes. Although the AuYoungs' other income for real property tax purposes was below $60,000, after distributions from the Roth IRA, the AuYoungs had access to $66,586. Thus, the AuYoungs are not in the group of homeowners with access to less than $60,000 that ROH § 8-13.2(3) was created to protect.

---

[9] By contrast, the AuYoungs' gross pensions and annuities distributions of $848,205 were properly excluded by BFS. Although these pensions and annuities, like the Roth IRA distributions, are non-taxable for IRS purposes and would normally have been added to the AuYoungs' total income under ROH § 8-13.1(2), the BFS determined that they are rollovers, which are specifically excluded from calculation of income under the same ROH provision in accordance with the 2007 amendment. From the IRS transcript of the AuYoungs' Form 1040 tax return, it appears that the AuYoungs received $848,205 in pensions and annuities, of which $0 was taxable to the IRS. In its audit, the FSB determined that these were "rollovers, exchanges".

The Circuit Court was incorrect when it held Roth IRA distributions were not income for the purposes of ROH § 8-13.1.

### III. CONCLUSION

For the foregoing reasons, the June 27, 2017 Final Judgment and Order entered by the Circuit Court of the First Circuit is reversed.

DATED: Honolulu, Hawai'i, March 20, 2019.

On the briefs:

Duane W.H. Pang and
Karen K. Lee,
Deputies Corporation Counsel,
City and County of Honolulu,
for Appellee-Appellant.

Gary W.K. Au Young,
for Appellants-Appellees,
Ivan W.K. AuYoung & Beverly A.
AuYoung.

Chief Judge

Associate Judge

Associate Judge